1 **SINNETT LAW, APC.**
2 Wayne A. Sinnett (SBN: 302987)
 ws@sinlegal.com
3 444 West C Street, Suite 230
 San Diego, CA 92101
4 Tel: (619) 752-0703
5 Fax: (619) 330-2120
6 *Attorney for Plaintiff,*

7

8
 **UNITED STATES DISTRICT COURT**
9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 **MICHAEL YANG,** individually and    **Case No.:** 8:15-CV-2118 AG (JCGx)
 on behalf of all others similarly
12 situated,

13                                         **CLASS ACTION**

14          Plaintiff,

15                                         **MEMORANDUM OF POINTS AND**
          v.                              **AUTHORITIES  IN SUPPORT OF**
16                                         **PLAINTIFF'S MOTION FOR**
                                          **CLASS CERTIFICATION**

17 **ASSISTED CREDIT SERVICES,**
 **INC.; ASSISTED CREDIT**                **DATE:** June 6, 2016
18 **SERVICES, LLC.; ASSISTED**            **TIME:** 10:00 AM
 **CREDIT SERVICES,** an                   **COURTROOM:** 10D
19 unincorporated business, partnership,
 or association; **CARTER SMITH**,
20 individually and in his official         **JUDGE:** Hon. Andrew J. Guilford
 capacity; **MARCY COOK**,
21 individually and in her official
 capacity,
22
23
24          Defendants.
25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff, MICHAEL YANG, ("Plaintiff") respectfully moves this Court for an order: (i) certifying a Class under Rule 23 of the Federal Rules of Civil Procedure ("Rule" or "Rules"); appointing Plaintiff as Class Representative; (iii) appointing Wayne A. Sinnett of Sinnett Law, APC. as Class Counsel; and (iv) granting such further relief as the Court deems just and proper.

The present case is an anomaly in the context of class actions because Defendants, ASSISTED CREDIT SERVICES, INC. ("ACS INC"); ASSISTED CREDIT SERVICES, LLC. ("ACS LLC"); ASSISTED CREDIT SERVICES ("ACS"); CARTER SMITH; MARCY COOK (collectively as "Defendants"), have willfully refused to comply with the Court's Summons or participate in this action in any way. [Declaration of Wayne A. Sinnett "Sinnett Decl." at ¶ 8-27.].

In the First Amended Complaint ("FAC") Plaintiff alleges that he received a debt collection letter which failed to provide essential consumer protection disclosures required by The Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692, *et seq*., and The Rosenthal Fair Debt Collection Practices Act, ("RFDCPA") Cal. Civ. Code § 1788, *et seq*. [FAC at ¶ 35-46]. Plaintiff also alleges that many other consumers were sent the same letter.

This case is ideal for certification. As an initial matter, this cases readily fulfills all the requirements of Rule 23(a) and (b). Secondly, class actions brought under the FDCPA and RFDCPA are routinely certified in this Circuit and elsewhere (as described further below) and this fact pattern is nearly identical as other class actions based upon an unlawful collection letter which have been certified under the FDCPA.

Last, and perhaps most importantly, declining class certification in this case would result in a tremendous injustice to Plaintiff and the class and would set a dangerous precedent. Defendants have violated state and federal law and have

knowingly refused to respond to this action despite the Court's Summons compelling them to do so. Defendants have also refused to participate in a Rule 26(f) conference which has kept discovery closed and barred Plaintiff conducting discovery to support the present motion for class certification. Allowing Defendants to evade liability on a class-wide basis by simply ignoring the Court's Summons and refusing to participate in litigation simply cannot be the proper result.

## II. NATURE OF THE ACTION

The FDCPA was enacted in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). With the FDCPA Congress also sought to "promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). California sought similar protections by passing the RFDCPA opining that protecting consumers from unfair and deceptive debt collection practices was "essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Cal. Civ. Code § 1788.1. However, reigning in abusive debt collection practices wasn't just for the benefit of consumers, Congress also sought to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Thus, unlawful debt collection practices such as Defendants' not only harms consumers, but also other honest debt collectors who comply with state and federal collection laws.

The specific statutory provisions at issue here, 15 U.S.C. § 1692e(11), 15 U.S.C. § 1692g, and Cal. Civ. Code § 1812.700, are central to the legislative intent and purpose of both the FDCPA and RFDCPA because both deal with disclosure of the Defendants status as a debt collector and consumers being advised of applicable statutory protections.

Congress even went so far as to state that Section 1692g was considered to

1  be a "significant feature" of the of the FDCPA designed to "eliminate the
2  recurring problem of debt collectors dunning the wrong person or attempting to
3  collect debts which the consumer has already paid." S. REP. 95-382, 4, 1977
4  U.S.C.C.A.N. 1695, 1699.

5      The statutory disclosure requirements of the FDCPA are essential as they
6  ensure "that consumers are fully and truthfully apprised of the facts and of their
7  rights" which "enables them to understand, make informed decisions about, and
8  participate fully and meaningfully in the debt collection process." *Tourgeman v.*
9  *Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014); citing *Clark v.*
10 *Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). The
11 failure of a debt collector to disclose its status and advise consumers of their rights,
12 as Defendants have done here "frustrate[s] a consumer's ability to intelligently
13 choose his or her response" because they cannot invoke rights they do not know
14 exist. *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010).

15              ### III. LEGAL STANDARD

16     "As a threshold matter, entry of default does not alter the Court's analysis for
17 class certification. Certification under Rule 23 remains a necessary procedural
18 requirement in order for the class to recover damages." *Whitaker v. Bennett Law,*
19 *PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *3 (S.D. Cal. Oct. 27,
20 2014). However, "relief cannot be granted to a class before an order has been
21 entered determining that class treatment is proper." *Id.* citing *Davis v. Romney*, 490
22 F.2d 1360, 1366 (3d Cir. 1974). Therefore, Plaintiff respectfully requests the Court
23 rule on the present motion prior to entering default judgment.

24     Rule 23 contains two sets of class certification requirements set forth in Rule
25 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus.*
26 *& Serv. Workers Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th
27 Cir.2010). "A court may certify a class if a plaintiff demonstrates that all of the
28 prerequisites of Rule 23(a) have been met, and that at least one of the requirements

of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.,* 251 F.R.D. 439, 443 (N.D.Cal.2008). Rule 23(a) provides four prerequisites which all must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact exist that are common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008); citing Fed. R. Civ. P. 23(A).

The plaintiff must also show that one of the following requirements under Rule 23(b) for maintaining the suit has been satisfied: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *Id.* citing Fed. R. Civ. P. 23(b).

### III. ARGUMENT

**A. THE PUTATIVE CLASS SATISFIES ALL FOUR REQUIREMENTS OF RULE 23(A)**

Subject to amendment as the Court deems appropriate, Plaintiff defines the "Class" as:

> (i) all persons with addresses within the State of California; (ii) who were sent a written communication by Defendants; (iii) which was the same or similar to Exhibit 1 of First Amended Complaint; (iv) to recover a consumer debt; (v) which was not returned undelivered by the United States Postal Service; (vi) within one year prior to the filing of the initial Complaint in this action.

As explained in more detail below, the Class is based upon Defendant's widespread use of a particular debt collection letter in an effort to recover debts from consumers. As such, the Class meets all four requirements of Rule 23(a).

///

### 1.  *Rule 23(a)(1) – Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. *See* Fed.R.Civ.P. 23(a)(1). The term "impracticable" is not synonymous with impossible. However, the class must be adequately defined and clearly ascertainable before a class action may proceed. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679 (S.D. Cal. 1999). But the class need not be "so ascertainable that every potential member be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1760 at 117). As long as the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist. *Id.*

"It is a well held principle in the law of class actions that a specific number of class members is *not* necessary to satisfy the Rule 23 numerosity requirement. *See In re Cooper Companies Inc. Securities Litigation,* 254 F.R.D. 628, 634 (C.D.Cal.2009). However, "As a general guideline, …a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.") Newberg on Class Actions, *No Strict Numerosity Threshold* § 3:12 (5th ed. 2011).

Although Plaintiff does not know the exact number of putative Class Members at this time, he reasonably believes that they number in the hundreds, if not thousands, and has alleged such in the Amended Compliant. [FAC at ¶ 54-55.] Plaintiff has confirmed these allegations in a sworn declaration. [Declaration of Michael Yang "Yang Decl. ¶ 6.]. These allegations are confirmed by objective evidence as well. The Chamber of Commerce estimates Defendants' annual revenue is between $501,000 and $999,999. [Chamber of Commerce Website, Exhibit 1]. This figure is supported by Defendants' website that boost Defendants have been in business for twenty-eight (28) years and conducts business on six (6) separate continents including Africa, Asia, Central and South America, Europe,

North American and Oceania. [Defendants' Website, Exhibit 2]. Quoting a recent study by Ernst and Young, Forbes claims that the national average for debt collection agency commissions is 18.8 percent *i.e.* the agency keeps 18.8 percent of the money they collect. [Forbes Article at p. 3, Exhibit 3].

Based on the national commission average, Defendants would need to collect **over 5 million dollars in debt a year** to generate the million dollars of annual revenue estimated by the Chamber of Commerce.[1] Even if every debt collected was $5,000 (which would be quite high) that would equate to one thousand debts and a thousand members in the Class.

"While this number is partially based on speculation, it is a well held principle in the law of class actions that a specific number of class members is not necessary to satisfy the Rule 23 numerosity requirement." *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014); citing *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). It is also worth noting that Plaintiff is unable to provide the exact number of class members because Defendants have knowingly refused to participate in a Rule 26(f) conference despite the Court's explicit order to do so (ECF No. 9) and Plaintiff's numerous demands. [Sinnett Decl." at ¶ 12-25.]. Without a Rule 26(f) conference discovery has remained closed barring Plaintiff from conducting discovery to support the present motion.

However, given the low threshold of roughly forty (40) class members, the numerosity requirement is easily satisfied here.

### 2. *Rule 23(a)(2) – Commonality*

Under Rule 23(a)(2), Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that plaintiffs must demonstrate "the capacity of a classwide proceeding to generate common answers" to common questions of law or fact that are "apt to

---

[1]  18.8 percent of $5,319,148 equates to one million in revenue.

drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotations marks omitted). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). "The common contention ... must be of such a nature that ... its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

The claims here are simple because they're based on a one-page debt collection letter utilized by Defendants to collect debts. Therefore, the issues that need to be resolved in this case are whether the contents of the letter violate the FDCPA and RFDCPA. Specifically, the common questions in this matter include the following:

1. Whether the letter stated the amount of the debt as required by 15 U.S.C. § 1692g;

2. Whether the letter stated that Defendants are debt collectors and that any information obtained would be used for that purpose as required by 15 U.S.C. § 1692e(11);

3. Whether the letter provided a consumer collection notice as required by Cal. Civ. Code § 1812.700.

The FDCPA is a strict liability statute and claims are adjudicated on an *objective* "least sophisticated standard." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1005 (9th Cir. 2008). Therefore, the court can resolve all common issues in this case in "one stroke" as they are based on the contents of a single debt collection letter. Numerous courts within the Ninth Circuit have applied this rationale holding the commonality requirement is satisfied in FDCPA class actions based upon a debt collection letter. *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 3523696, at *4 (N.D. Cal. June 4, 2015); *Gold v. Midland Credit Mgmt., Inc.*, 306

**1**  F.R.D. 623, 631 (N.D. Cal. 2014) *Bracamonte v. Eskanos & Adler*, No. C 03-
**2**  01821 SI, 2004 WL 1146624, at *4 (N.D. Cal. May 7, 2004).

**3**     Accordingly, the commonality requirement under Rule 23(a)(2) is met.

**4**    **3. *Rule 23(a)(3) – Typicality***

**5**     Rule 23(a)(3) requires that "the claims and defenses of the representative
**6**  parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).
**7**  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with
**8**  those of absent class members; they need not be substantially identical." *Hanlon,*
**9**  150 F.3d at 1020.

**10**     Here, the typicality analysis is similar, if not the same, as that of
**11**  commonality. The claims at issue are based on an unlawful debt collection letter
**12**  and anyone who received the letter has the exact claims as other recipients of the
**13**  letter. And again, courts within the Ninth Circuit have come to similar conclusions
**14**  regarding typicality in FDCPA class actions based upon debt collection letters. For
**15**  typicality, Plaintiffs rely on a similar argument as they did for commonality.
**16**  Specifically that, typical claims amongst all potential class members exist because
**17**  Defendant sent unlawful form collection letters to Plaintiffs.... Accordingly, the
**18**  typicality requirement is satisfied. *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D.
**19**  505, 510-511 (N.D. Cal. 2007), modified, No. C05 04993 MJJ, 2007 WL 2220972
**20**  (N.D. Cal. Aug. 1, 2007), aff'd sub nom. *Hunt v. Imperial Merch. Servs., Inc.*, 560
**21**  F.3d 1137 (9th Cir. 2009). "Under the circumstances of this case, the Court finds
**22**  that Bracamonte has asserted claims which are typical of the other class members'
**23**  claims, in that each of the class members was sent the same letter, was subjected to
**24**  the same alleged violation and was injured, if at all, in the same way. *Bracamonte*
**25**  *v. Eskanos & Adler*, No. C 03-01821 SI, 2004 WL 1146624, at *4 (N.D. Cal. May
**26**  7, 2004)

**27**     Accordingly, the typicality requirement under Rule 23(a)(3) is met.

**28**  *///*

---

*///*

### 4. *Rule 23(a)(4) – Adequacy*

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 120. Both Plaintiff and his attorneys of record are adequate and satisfy this standard under the Rule.

The class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991). The class representative should understand the basic facts underlying her claims. *In re Discovery Zone Sec. Litig.,* 169 F.R.D. 104, 109 (ND Ill. 1996). "General knowledge and participation in discovery are sufficient to meet this standard." *Id.* In demonstrating a class representative's adequacy, the burden is not a heavy one. *In re: CBC Companies, Inc.,* 181 F.R.D. 380 (N.D. Ill. 1998).

Plaintiff has no impediments, which would make him inappropriate as lead plaintiff, and plaintiff possesses no interests antagonistic to the class. [Yang Decl. at ¶ 10.]. Additionally, Plaintiff is also well-versed in his claims and has expressed willingness to assist in the litigation of these claims on behalf of the class. [Decl. Whitaker ¶ 10.].

Further**,** Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes. [See, generally, Sinnett Decl.]. Counsel has significant background in protecting consumers on an individual and class-wide basis.

Wayne A. Sinnett has extensive experience litigating FDCPA and RFDCPA actions, among other consumer protection statues, including numerous cases before this Court and the Southern District. [Sinnett Decl. ¶ 5.]. Additionally, Mr. Sinnett is currently lead counsel in an FDCPA class action alleging similar claims under 15 U.S.C. § 1692e(11), 15 U.S.C. § 1692g, and Cal. Civ. Code § 1812.700.

1  *See Malakha v. Nationwide Credit Inc.*, 15-CV-01562-DMS-MDD (S.D. Cal. July
2  15, 2015)

3       Because of his considerable experience, Plaintiff's counsel is adequate to
4  serve as class counsel. "[This] standard is easily met, with members of the bar in
5  good standing typically deemed qualified and competent to represent a class
6  absent evidence to the contrary." Newberg on Class Actions, *Adequacy of Class*
7  *Counsel Under Rule 23(a)(4)* § 3:72 (5th ed. 2011); See also, *Local Joint*
8  *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244
9  F.3d 1152, 1162 (9th Cir. 2001). Regardless, it is Defendant's burden to show that
10 counsel is *inadequate*, when Plaintiff has made a prima facie showing to the
11 contrary. *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D.
12 597, 606-607 (W.D.N.C. 1993.)   Defendant cannot do so and therefore this prong
13 is fulfilled.

14 **B. THE PUTATIVE CLASS SATISFIES BOTH REQUIREMENTS OF RULE 23(B)(3)**

15      Certification under Rule 23(b)(3) is appropriate when subdivisions (a)(1)
16 through (4) are satisfied and "the court finds that the questions of law or fact
17 common to the members of the class predominate over any questions affecting
18 only individual members, and that a class action is superior to other available
19 methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).
20 *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir.
21 2009).

22      This subsection of Rule 23 permits certification where a class action "may
23 nevertheless be convenient and desirable." *Adv. Comm. Notes*, 28 U. S. C. App., p.
24 697.   A class may be certified under Rule 23(b)(3) if the court "finds that the
25 questions of law or fact common to class members predominate over any questions
26 affecting only individual members, and that a class action is superior to other
27 available methods for fairly and efficiently adjudicating the controversy." *Vinole*,
28 571 F.3d at 944.

Thus, in order to approve an action under this Rule, the Court must find that this class action is both superior to other methods of adjudication and that common questions predominate over individualized inquiries. The Court will find both elements satisfied here.

### 1. *Rule 23(b)(3) – Predominance*

Whether common issues predominate depends on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole,* 571 F.3d at 945, quoting *Hanlon,* 150 F.3d at 1022. This issue also requires review of whether "adjudication of common issues will help achieve judicial economy." *Vinole,* 517 F.3d at 945, quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir.2001).

First, the questions of law and fact presented in this lawsuit are common to all members of the class and certainly predominate over any questions affecting only individual members. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974).  As discussed above, this case involves the following common questions:

1. Whether the letter stated the amount of the debt as required by 15 U.S.C. § 1692g;

2. Whether the letter stated that Defendants are debt collectors and that any information obtained would be used for that purpose as required by 15 U.S.C. § 1692e(11);

3. Whether the letter provided a consumer collection notice as required by  Cal. Civ. Code § 1812.700; and

4. Whether Defendant is liable for statutory damages; and the amount of such damages.

In making the assessment of whether common questions predominate, most courts utilize a pragmatic approach, analyzing the basic elements of the claims, and emphasizing the efficiencies of class treatment, the significance of common

1  questions and whether class certification would result in the serious distortion of

2  the lawsuit. *See Windham v American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977) (*en*

3  *banc*). Ordinarily, if the liability issue is common to the class, like it is here,

4  common questions are held to predominate over individual ones.

5      The answers to these questions can be found by simply looking to the

6  content of the unlawful debt collection letter used by Defendants. [See FAC,

7  Exhibit 1]. In FDCPA class actions based upon a collection letter, such as this case,

8  the Court can simply look to the contents of the letter itself to determine if liability

9  arises. Therefore, the legal issues for all potential class members are the same

10  because they all received the same letter. Applying this rationale courts within the

11  Ninth Circuit have routinely found the predominance prong satisfied in cases such

12  as the present:

> With regard to **Rule 23(b)(3),** Bracamonte argues that he
> must only show an essential common factual link between
> all class members and the defendant for which the law
> provides a remedy. *Valentino v. Carter–Wallace, Inc.,* 97
> F.3d 1227 (9th Cir.1996). He contends that the legal issues
> for all potential class members are the same, since they all
> received the same letter, namely Exhibit A. Arguing that
> the standardized "document is the focal point of the
> analysis," Bracamonte concludes that common questions
> predominate and that a class action will most efficiently
> and consistently resolve his claim concerning a
> standardized collection letter. Furthermore, since the
> individual claims are small, the class action will protect the
> rights of individual class members who are unable or
> unwilling to protect themselves. This Court agrees.

24  *Bracamonte v. Eskanos & Adler*, No. C 03-01821 SI, 2004 WL 1146624, at *5

25  (N.D. Cal. May 7, 2004).

26      Other Courts have reached the same result, "Here, the legal issues arising

27  from Defendant's demand letters are the same for each class member… As a result,

28  the Court finds that the predominant common questions in this case present a clear

1  justification for handling the dispute on a representative rather than on an
2  individualized basis." *Hunt,* 241 F.R.D. 514; see also, *Gonzales*, 233 F.R.D. 582.

3      The central issue of Defendants' liability is whether or not the contents of
4  their letter violated the FDCPA and RFDCPA. This common question of liability
5  dominates over individual questions, if any even exist.

6      Therefore, Plaintiff meets the Rule 23(b)(3)(A) predominance requirement.

7  **2. *Rule 23(b)(3) – Superiority***

8      "Plaintiffs must also demonstrate that a class action is 'superior to other
9  available methods for fairly and efficiently adjudicating the controversy.' " *Otsuka,*
10 251 F.R.D. at 448 (citing Fed.R.Civ.P. 23(b)(3)). "Where classwide litigation of
11 common issues will reduce litigation costs and promote greater efficiency, a class
12 action may be superior to other methods of litigation," and it is superior "if no
13 realistic alternative exists." *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227,
14 1234–35 (9th Cir.1996). This inquiry "requires determination of whether the
15 objectives of the particular class action procedure will be achieved in the particular
16 case." *Hanlon,* 150 F.3d at 1023. Relevant to the present analysis are the following
17 Rule 23(b)(3) factors: "(C) the desirability or undesirability of concentrating the
18 litigation of the claims in the particular forum; and (D) the likely difficulties in
19 managing a class action." Fed.R.Civ.P. 23(b)(3)(C) & (D).

20     Again, Courts within the Ninth Circuit routinely hold that a class action is a
21 superior means of resolving FDCPA cases:

22         [T]he Court finds that a class action in this context is
23         superior to individual claims. First, the Court agrees that
           individual consumers are most likely unaware of their
24         rights under the FDCPA and that the likelihood of
25         individual actions is remote. See Ballard, 186 F.R.D. at
           600. Second, the drafters of the FDCPA contemplated
26         class action recovery within the liability portion of the act.
27         Third, the size of any individual damages claims under the
           FDCPA are usually so small that there is little incentive to
28         sue individually. See id. (citing Amchem Prods., Inc., 521

> U.S. at 615, 117 S.Ct. 2231). Fourth, efficiency and consistency of concerns favor litigating the legality of Defendant's standardized conduct by all class members in one suit, rather than forcing each class member to sue individually. Id. (citing Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 188–89 (N.D.Ill.1992)). Finally, as was the case in Ballard, while valid concerns regarding the manageability of the class exist in relation to liability, they are not sufficient to defeat certification.

*Hunt*, 241 F.R.D. 514-15.

Individual consumers are typically unaware of their rights, that is even a central issue of liability in this case given Defendant's violations of 15 U.S.C. § 1692g, 15 U.S.C. § 1692e(11) and Cal. Civ. Code § 1812.700. This makes the likelihood of individual actions remote, as consumers are unlikely to enforce rights they don't know exist. Additionally, individual statutory damages under the FDCPA and RFDCPA are small ($2,000 collectively) so there is little incentive to litigate individually. Last, The FDCPA and RFDCPA claims brought in this putative class are unified under one narrow statute with explicit confines defining both liability and available damages making class-wide resolution of this action efficient. *See* 15 U.S.C. § 1692k and Cal. Civ. Code § 1788.30. A class action is the superior, if not the only, means of determining liability in this case and securing a recovery for the Class.

Accordingly, the Plaintiff has satisfied the Rule 23(b)(3) superiority requirement.

## C. THE INCLUSION OF RFDCPA CLAIMS DOES NOT AFFECT CERTIFICATION

While most of Plaintiff's motion focuses on certification of FDCPA claims as the federal statute is more prevalent than its sister state law component, the RFDCPA, the inclusion of FDCPA claims in the Class does not affect certification. "The Court finds the legislative history demonstrates the legislature intended to allow class actions for violations of the Rosenthal Act. Accordingly, Plaintiff's claims brought under the Rosenthal Act may be certified as a class action if

1   Plaintiff meets the requirements of Rule 23." *Gonzales v. Arrow Fin. Servs., LLC*,

2   233 F.R.D. 577, 581 (S.D. Cal. 2006).

3       As discussed above, Plaintiff has demonstrated this case meets the

4   requirements of Rule 23(a)-(b) and claims under both the FDCPA and RFDCPA

5   may be properly certified as a class action.

6   **D. THE EFFECT OF DEFAULT IN THIS MATTER**

7       Plaintiff seeks to certify the Class at this time in order to have the judgment

8   be entered on behalf of the certified Class.  Plaintiff recognizes that this motion is

9   unusual given the procedural status of this case.  Defendant has defaulted and

10  Plaintiff is concurrently seeking to enter a default judgment, with the exact amount

11  of damages to be inserted upon completion of post-judgment discovery. However,

12  Plaintiff's request to certify this class and approve his motion for default judgment

13  on behalf of the class is justified and supported by case law and public policy.

14      First, there is Ninth Circuit precedent that supports Plaintiff's request for

15  default judgment on behalf of a class.  *Hester v. Vision Airlines, Inc.*, 687 F.3d

16  1162 (2012).  In the *Hester* case, Defendant answered and appeared in the class

17  action alleged against it.  However, through a series of flagrant discovery abuses,

18  including disobeying multiple court orders to produce documents, the district court

19  eventually granted terminating sanctions, striking defendant's answer and entering

20  default judgment.  *Id.* at 1168.

21      Plaintiff had previously certified the class and therefore default judgment

22  was entered on behalf of the class as a whole.  *Id.* at 1166.  The Ninth Circuit

23  *affirmed* the district court's default judgment order, stating that the district court

24  had made the appropriate findings to support its entry of default judgment.

25      Secondly, on policy reasons alone, this Court should approve Plaintiff's

26  motion for class certification against Defendant for its egregious violations of the

27  FDCPA and RFDCPA.  Plaintiff has made a *prima facie* showing that he satisfies

28  all of the required elements of Rule 23. The fact that he is also seeking default

judgment against Defendant simultaneously should not be used as an argument against certification of the class.

Defendant has *elected* not to participate in this lawsuit despite Plaintiff's counsel's nineteen (19) attempts to contact Defendants regarding this matter. ***Plaintiff's rights, and those of his fellow class members, should not be impaired because Defendant has selected avoidance as its method to dodge adjudication on the merits of his claims.*** This would be a drastically unfair result to Plaintiff, and to his fellow class members.

## IV. CONCLUSION

Class certification should be approved for the reasons submitted in this motion and then the issue of default judgment should be addressed, in that order. Unless the Class is certified when the judgment is entered, it will effectively be a judgment only on behalf of Plaintiff.  Defendant should not be rewarded for its blatant tactics to avoid adjudication on the merits of Plaintiff's claims simply by ignoring the lawsuit – this cannot be the right result.

Plaintiff requests that if for any reason the Court is not inclined to certify the Class at the time of entry of the default judgment, that the Court permit Plaintiff to cure any deficiencies the Court may find in his Class certification request and resubmit his motion.


Dated: April 28, 2016                              Respectfully submitted,


                                                  **SINNETT LAW, APC.**


                                                  BY: /s/ WAYNE A. SINNETT
                                                  WAYNE A. SINNETT, ESQ.
                                                  ATTORNEY FOR PLAINTIFF