1 | **SINNETT LAW, APC.**
2 | Wayne A. Sinnett (SBN: 302987)
ws@sinlegal.com
3 | 444 West C Street, Suite 230
San Diego, CA 92101
4 | Tel: (619) 752-0703
5 | Fax: (619) 330-2120
6 | *Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL YANG,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ASSISTED CREDIT SERVICES, INC.; ASSISTED CREDIT SERVICES, LLC.; ASSISTED CREDIT SERVICES,** an unincorporated business, partnership, or association; **CARTER SMITH**, individually and in his official capacity; **MARCY COOK**, individually and in her official capacity,<br><br>Defendants. | **Case No.:** 8:15-CV-2118 AG (JCGx)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>DATE:  September 25, 2017<br>TIME:  10:00 AM<br>COURTROOM: 10D<br><br>JUDGE: Hon. Andrew J. Guilford |

## MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION

This motion seeks a default judgment that awards statutory damages of $2,000 for each of the 153 Class Members who received an unlawful debt collection letter from Defendants for a total of $306,000 in statutory damages. Plaintiff is also filing a concurrent motion for attorney's fees and costs in the Amount of $84,320.45 and an incentive award in the amount of $10,000 for Plaintiff's service as the class representative over the course of the last two years of litigating this case. The total sought for the default judgment is therefore $400,320.35.

This motion addresses each of the requisite *Eitel* default judgment factors but it should be noted from the onset that this Court has already ruled on the valuation of attorney's fees and statutory damages under the same statutes at issue in this case specifically as it pertains to entering a default judgment against the very same defendants in this action. *Baeza v. Assisted Credit Services, Inc.*, No. 815CV01451ODWJCG, 2016 WL 3912016, at *4 (C.D. Cal. July 19, 2016) ("The Court also finds damages under the FDCPA appropriate… an award of $1,000 for the [FDCPA] statutory violation is thus proper."). Therefore, the Court has already ruled on the issues presented in this motion.

## II. STATEMENT OF FACTS

Plaintiff filed his initial Class Action Complaint naming Defendant, ASSISTED CREDIT SERVICES, INC., ("ACS, INC.") on December 20, 2015. [ECF No. 1]. The Complaint was served on CARTER SMITH, president of ACS, INC., on December 22, 2015. [ECF No. 8]. On February 18, 2016, Plaintiff filed his First Amended Complaint ("FAC") adding Defendants, ASSISTED CREDIT SERVICES, LLC. ("ACS LLC"); ASSISTED CREDIT SERVICES ("ACS"); CARTER SMITH, individually and in his official capacity; and MARCY COOK, individually and in her official capacity, (collectively as "Defendants"). All

1   Defendants were properly served with the Summons and FAC by a registered
2   process server. [Declaration of Wayne A. Sinnett "Sinnett Decl." ¶ 2-6].

3       Plaintiff's counsel spoke with Defendants on numerous instances but
4   Defendants adamantly refused to respond to the Court's Summons or conduct a
5   Rule 26(f) conference. [Sinnett Decl. ¶ 7-26]. Specifically, Plaintiff's counsel has
6   communicated with Defendants by phone, email or written correspondence on
7   *nineteen (19) occasions* and Defendants have knowingly refused to respond to the
8   Court's Summons or participate in this action in any way. [Sinnett Decl. at ¶ 7-26].
9   Defendants have also engaged in similar conduct in another FDCPA action filed in
10  this Court. *Baeza v. Assisted Credit Services, Inc.*, No. 815CV01451ODWJCG,
11  2016 WL 3912016, at *4 (C.D. Cal. July 19, 2016).

12      The Court entered default on or before April 28, 2016. [ECF No. 23, 26].
13  Plaintiff filed a Motion for Class Certification on April 28, 2016 which was
14  granted on July 5, 2017. [ECF No. 27]. At that time, Court also opened discovery
15  to allow Plaintiff to obtain the identities of the class members. After a series of
16  Motions to Compel, Plaintiff has obtained the contact information of 153 class
17  members. On June 19, 2017, Plaintiff filed a Motion for Approval of Notice of
18  Class Certification to obtain approval to provide notice to the class prior to the
19  Court entering a judgment. [ECF No. 51]. The present motion follows.

20                    ## III.  NATURE OF THE ACTION

21      The Frist Amended Complaint ("FAC") alleges violations of The Fair Debt
22  Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692, *et seq*. and The Rosenthal
23  Fair Debt Collection Practices Act, ("RFDCPA") Cal. Civ. Code § 1788, *et seq*.
24  Plaintiff's avers that Defendants send him a debt collection letter threatening him
25  with a collection lawsuit and that Defendants' letter failed to include a host of
26  required statutory disclosures. Specifically, Defendants' letter failed to disclose
27  Defendants' status as a debt collector in violation of 15 U.S.C. § 1692e(11); failed
28  to state the amount of the alleged debt in violation of 15 U.S.C. § 1692g(a)(1); and

1  failed to provide a Consumer Collection Notice advising consumers, *inter alia*, that

2  they could report debt collector misconduct to the Federal Trade Commission in

3  violation of Cal. Civ. Code § 1812.700. [*See* First Amended Complaint "FAC" ¶

4  34-47]. The disclosures at issue are not merely perfunctory, they are important

5  disclosures meant to educate consumers, regulate the debt collection industry, and

6  aid governmental agencies in their regulatory duties.

7         The FDCPA was enacted in response to "abundant evidence of the use of

8  abusive, deceptive, and unfair debt collection practices by many debt collectors."

9  15 U.S.C. § 1692(a). With the FDCPA Congress also sought to "promote

10  consistent state action to protect consumers against debt collection abuses." 15

11  U.S.C. § 1692(e). California took such action by passing the RFDCPA opining that

12  protecting consumers from unfair and deceptive debt collection practices was

13  "essential to the continued functioning of the banking and credit system and sound

14  extensions of credit to consumers." Cal. Civ. Code § 1788.1. However, reigning in

15  abusive debt collection practices wasn't just for the benefit of consumers, Congress

16  also sought to "ensure that those debt collectors who refrain from using abusive

17  debt collection practices are not competitively disadvantaged." 15 U.S.C. §

18  1692(e). Thus, unlawful debt collection practices such as Defendants' not only

19  harms consumers but also other honest debt collectors who comply with state and

20  federal collection laws.

21         The specific statutory provisions at issue here, 15 U.S.C. § 1692e(11), 15

22  U.S.C. § 1692g, and Cal. Civ. Code § 1812.700, are central to the legislative intent

23  and purpose of both the FDCPA and RFDCPA because they deal with the

24  disclosure of the Defendants' status as a debt collector and consumers being

25  advised of applicable statutory protections. Congress even went so far as to state

26  that Section 1692g was considered to be a "significant feature" of the FDCPA

27  designed to "eliminate the recurring problem of debt collectors dunning the wrong

28  person or attempting to collect debts which the consumer has already paid."

1   S. REP. 95-382, 4, 1977 U.S.C.C.A.N. 1695, 1699.

2   The disclosure requirements of the FDCPA are essential as they ensure "that
3   consumers are fully and truthfully apprised of the facts and of their rights" which
4   "enables them to understand, make informed decisions about, and participate fully
5   and meaningfully in the debt collection process." *Tourgeman v. Collins Fin. Servs.,*
6   *Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014); citing *Clark v. Capital Credit &*
7   *Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). The failure of a debt
8   collector to disclose its status and advise consumers of their rights, as Defendants
9   have done here, "frustrate[s] a consumer's ability to intelligently choose his or her
10  response" because they cannot invoke rights they do not know exist. *Donohue v.*
11  *Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010).

## IV.  LEGAL STANDARD

12
13  Under to Rule 55(b), a court may order default judgment following the entry
14  of default by the Clerk of the Court. After default has been entered, the factual
15  allegations of the complaint are taken as true, except for those allegations relating
16  to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).
17  Entry of default judgment is completely at the discretion of the trial court.  *Eitel v.*
18  *McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).   In determining whether default
19  judgment is appropriate, courts utilize the following *Eitel* factors: (1) the
20  possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
21  claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
22  action; (5) the possibility of a dispute concerning material facts; (6) whether the
23  default was due to excusable neglect, and (7) the strong policy underlying the
24  Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*,
25  782 F.2d 1470, 1471 (9th Cir. 1986).

26  ///

27  ///

28  ///

# V. ARGUMENT

## A. IF A DEFAULT JUDGEMENT WERE DENIED THE PREJUDICE TO THE CLASS WOULD BE SIGNIFICANT

Under the first *Eitel* factor, a plaintiff is prejudiced if they would be denied the right to judicial resolution of their claims in the absence of a default judgment. *Elektra Entertainment Group Inc. v. Crawford,* 226 F.R.D. 388, 392 (C.D. Cal. 2005). That is certainly the case here as the Class has no recourse other than a default judgment. Without a default judgment to resolve their claims, the Class would receive no compensation for the unlawful conduct they've been subject to by Defendants.

Also, if no judgment is entered against Defendants they would be allowed to glean a financial advantage over other debt collectors by way of their unlawful conduct. That is at direct odds with the express purpose of the FDCPA which is to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

## B. THE CLASS CLAIMS ARE MERITORIOUS AND SUFFICIENTLY PLEAD

"In order to state a claim for relief under the FDCPA, a plaintiff must show that (1) he or she is a "consumer," (2) the defendant is a "debt collector," and (3) the defendant has acted or failed to act in violation of the FDCPA. *Mannello v. Residential Credit Sols., Inc.*, No. 215CV07674CASAJW, 2016 WL 94236, at *4 (C.D. Cal. Jan. 7, 2016); citing *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009). The elements are same same for claims brought under the RFDCPA. *Id*.

Plaintiff and the class have adequately alleged that they are "consumer[s]" (FAC ¶ 12, 27, 32, 33, 59) and that Defendants engaged in conduct that violated the FDCPA and RFDCPA. [FAC ¶ 28-47 and 66-72]. Plaintiff has also adequately alleged that Defendants are "debt collectors" under both statutes. [FAC ¶ 14-27]. In applying the *Eitel* factors, the factual allegations of the complaint are taken as

1   true, except those relating to the amount of damages. *See Geddes v. United Fin.*
2   *Grp.*, 559 F.2d 557, 560 (9th Cir.1977); *TeleVideo Systems, Inc. v. Heidenthal*, 826
3   F.2d 915, 917-18 (9th Cir. 1987). Therefore, the following allegations are taken as
4   true and the Class has stated meritorious and sufficiently plead claims.

5        However, further explanation is warranted as to CATER SMITH and
6   MARCY SMITH being named in their individual and official capacity. At first
7   blush this seems to implicate an issue with piercing the corporate veil. However,
8   there is no veil to pierce as "all powers, rights, and privileges" of ASSISTED
9   CREDIT SERVICES, INC. have been suspended by the State of California. [See
10  FAC ¶ 14-16 at Exhibit 2]. Moreover, ***every*** district court in the Ninth Circuit to
11  consider the issue has concluded that individual employees may be head personally
12  liable as "debt collectors" under the FDCPA:

13       The Sixth Circuit and the majority of district courts that have
         considered the issue, <u>including all such district courts in the</u>
14       <u>Ninth Circuit,</u> have concluded that employees can be held
         personally liable under the FDCPA.
15

16  *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1058-60
17  (C.D. Cal. 2009); *citing Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1070-74
18  (E.D. Cal. 2008); *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d
19  433, 435–38 (6th Cir.2008); *Del Campo v. Kennedy,* 491 F.Supp.2d 891, 904
20  (N.D.Cal.2006); *Newman v. Checkrite Cal.,* 912 F.Supp. 1354, 1372
21  (E.D.Cal.1995). Accordingly, CATER SMITH and MARCY SMITH are debt
22  collectors and may be held liable for their violations of the FDCPA and RFDCPA.

23       Additionally, Plaintiff is ***not*** seeking statutory damages "per" each defendant
24  but seeking joint and several liability for the entire judgment. A contrary ruling
25  would defeat well established law that "employees can be held *personally liable*
26  under the FDCPA." *Robinson*, 654 F. Supp. 2d 1051, 1058-60.

27  ///
28  ///

## C. THE SUM OF MONEY AT STAKE IN THIS MATTER

In determining the fourth *Eitel* factor, whether the sum of money at stake is reasonable, the Court must consider the amount of money sought in relation to the seriousness of Defendant's conduct. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).

Under the FDCPA, a defendant is liable for statutory damages of up to $1,000. 15 U.S.C. § 1692k(a). In determining the amount of damages to award, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Under the RFDCPA, defendants are also liable for up to $1,000 in statutory damages and damages may be awarded cumulatively under both statutes. Cal. Civ. Code § 1788.30(b); 15 U.S.C. § 1692n; Cal. Civ. Code § 1788.32; *Gonzales v. Arrow Fin. Servs., LLC.,* 660 F.3d 1055, 1059 (9th Cir. 2011).

Here, Plaintiff and the Class are entitled to statutory damages of $1,000 under both the FDCPA and RFDCPA for a total of $2,000 per class member. First, cumulative statutory awards under the FDCPA and RFDCPA are proper. *Gonzales v. Arrow Fin. Servs., LLC.,* 660 F.3d 1055, 1059 (9th Cir. 2011). Second, an award of full statutory damages, *i.e.* $2,000, is warranted here based upon the nature and persistence of Defendants' violations.

To begin, the FDCPA is a strict liability statute and thus no showing of intent is required. See *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Reichert v. Nat'l Credit Sys., Inc*., 531 F.3d 1002, 1005 (9th Cir. 2008). Also, the specific statutory provisions at issue here, 15 U.S.C. § 1692e(11), 15 U.S.C. § 1692g, and Cal. Civ. Code § 1812.700, are central to the legislative intent and purpose of both the FDCPA and RFDCPA because they deal with disclosure of Defendants' status as a debt collector and consumers being advised of applicable statutory protections. Congress even went so far as to state that Section

1692g was considered to be a "significant feature" of the of the FDCPA designed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. REP. 95-382, 4, 1977 U.S.C.C.A.N. 1695, 1699.

The statutory disclosure requirements of the FDCPA are essential as they ensure "that consumers are fully and truthfully apprised of the facts and of their rights" which "enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014); citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). The failure of a debt collector to disclose its status and advise consumers of their rights, as Defendants have done here, "frustrate[s] a consumer's ability to intelligently choose his or her response" because they cannot invoke rights they do not know exist. *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010).

Defendants' violations were knowing and intentional (FAC ¶ 6) and they failed to disclose their status as debt collectors and similarly failed to advise consumers that they could report debt collector misconduct to the Federal Trade Commission so that they could continue to skirt state and federal law without governmental oversight. This frustrates the FTC's ability to regulate the finance and collection industry and is clearly violative of the FDCPA and RFDCPA.

Moreover, District Courts routinely award the full measure of statutory damages in FDCPA and RFDCPA default judgments. *Ochwat v. Pinnacle Asset Grp.*, L.L.C., No. 2:15-CV-2130-JAM-EFB, 2016 WL 3541452, at *2 (E.D. Cal. June 24, 2016) (awarding $2,000 in statutory damages under the FDCPA and RFDCPA in a default judgment); *Muse v. Thompson & Assocs., PC* (E.D.Cal. Mar. 4, 2010, No. CIV S-09-2489 JAM EFB) 2010 U.S. Dist. LEXIS 19596, at *13.) (same); *McBride v. Del. Solutions, LLC* (E.D.Cal. Oct. 5, 2015, No. 2:15-cv-1222-MCE-KJN) 2015 U.S. Dist. LEXIS 135738, at *10-11.) (same); *Hartung v. J.D.*

1 | *Byrider, Inc.* (E.D.Cal. June 26, 2009, No. 1:08-cv-00960 AWI GSA) 2009 U.S.

2 | Dist. LEXIS 54415, at *31.) (same).

3 | Last, and possibly most importantly, this Court has already ruled on the

4 | valuation of statutory damages under the FDCPA specifically as it pertains to

5 | entering a default judgment against the very same defendants in this action. *Baeza*

6 | *v. Assisted Credit Services, Inc.*, No. 815CV01451ODWJCG, 2016 WL 3912016,

7 | at *4 (C.D. Cal. July 19, 2016) ("The Court also finds damages under the FDCPA

8 | appropriate… an award of $1,000 for the [FDCPA] statutory violation is thus

9 | proper.").

10 | Including *Baeza*, this is the second time Defendants have attempted evade

11 | liability under the FDCPA by walking away from a lawsuit. Given that one of the

12 | primary factors for affixing damages under the FDCPA is "*the frequency and*

13 | *persistence of noncompliance by the debt collector*" it only makes sense to award

14 | full statutory damages the *second time* Defendants have engaged in the same

15 | unlawful conduct before this Court. 15 U.S.C. § 1692k(b)(1).

16 | Plaintiff contends that an award of full statutory damages of $2,000 ($1,000

17 | under both FDCPA and RFDCPA) per Class Member for a total of $306,000 based

18 | on 153 class members is therefore reasonable and warranted.

19 | **D. THERE IS NO DISPUTE OF MATERIAL FACTS**

20 | As to the fifth *Eitel* factor, courts hold there are no outstanding issues of

21 | material fact when a defendant fails to appear for its lawsuit.  Particularly when the

22 | complaint is pled sufficiently, "no genuine dispute of material facts would preclude

23 | granting [Plaintiff's] motion." *Pepsico*, 238 F. Supp. 2d at 1177; *see Geddes*, 559

24 | F.2d at 560. That is the case here. Plaintiff has filed a complaint that properly

25 | alleges violations of the FDCPA and RFDCPA with appropriate class allegations.

26 | Defendant has failed to appear and there can be no issue of material fact when

27 | Defendant has not appeared to contest the complaint's allegations.

28 | ///

**E. DEFENDANT'S FAILURE IS NOT DUE TO EXCUSABLE NEGLECT**

There is no excusable neglect under the sixth *Eitel* factor. Defendants were properly served the complaint and summons exactly as required under Rule 4. [Sinnett Decl. ¶ 2-6]. In fact, Plaintiff's counsel went far beyond what is required by the Federal Rules and communicated with Defendants by phone, email or written correspondence on ***nineteen (19) occasions*** and Defendants' responded by knowingly and willfully refusing to respond to the Court's Summons or participate in this action in any way. [Sinnett Decl. ¶ 7-26]. This has been a pattern of conduct that Defendants have engaged in with regards to FDCPA actions in this Court. *See Baeza v. Assisted Credit Services, Inc*. No. 15-CV-01451-ODW-JCG, (C.D. Cal. September 9, 2015). There is simply no excusable neglect here.

**F. PUBLIC POLICY CONSIDERATIONS FAVORING A DECISION ON ITS MERITS**

The seventh *Eitel* factor of public policy is also satisfied. Although "[c]ases should be decided upon their merits whenever *reasonably possible*," this is not a requirement. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. at 1177 (citation omitted). Defendant's failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.*

The Class simply has no other option other than to seek a default judgment and therefore policy concerns should weight in favor of entering judgment in favor of the Class.

## VI. CONCLUSION

Default judgment class actions are exceedingly difficult. There are a myriad of due process issues with providing notice to the class along with practical concerns of how the Plaintiff will actually ascertain the identities of class members without the involvement (or records) of the Defendant. In this case, it took two years of litigation and *seven* noticed motions for Plaintiff to get to this point.

Meanwhile the Defendants have acknowledged this action (through phone conversations with Plaintiff's counsel) but have refused to respond to the Court's summons or participate in this action in any way. Its clear from *Baeza*, that this isn't the first time Defendants have employed this strategy to evade liability under the FDCPA.

Because damages are affixed by "*the frequency and persistence of noncompliance by the debt collector*" it only makes sense to award full statutory damages the *second time* Defendants have engaged in the same unlawful conduct before this Court. 15 U.S.C. § 1692k(b)(1).

Also, if the Court were to enter judgment for less than full statutory damages it would have serious public policy ramifications. For instance, if only 50% of damages were awarded it would signal to other defendants that they could defeat half their liability on a class-wide basis just but not showing up to court. That just would not be an equitable result.

Accordingly, Plaintiff respectfully contends he has established and he, and the class, are entitled to full statutory damages of $2,000 for each class member for a total of $316,000 in statutory damages.

Dated: July 21, 2016                    Respectfully submitted,

                                        **SINNETT LAW, APC.**

                                        BY: /S/ WAYNE A. SINNETT
                                        WAYNE A. SINNETT, ESQ.
                                        ATTORNEY FOR PLAINTIFF